IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARY ELIZABETH BROWN,                )
                                     )
         Plaintiff,                  )
                                     )
    v.                               )   1:17CV947
                                     )
NANCY A. BERRYHILL,                  )
Acting Commissioner of Social Security, )
                                     )
         Defendant.                  )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Mary Elizabeth Brown ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on August 12, 2013, alleging a disability onset date of April 12, 2013. (Tr. at 21, 184-87.)[1] She later amended her alleged onset date to August 23, 2014. (Tr. at 21.) Plaintiff's claim was denied initially (Tr. at 91-105, 122-25), and that determination was upheld on reconsideration (Tr. at 106-20, 131-34). Thereafter, she requested an administrative hearing de novo before an Administrative Law

---

[1] Transcript citations refer to the Administrative Record [Doc. #8].

Judge ("ALJ"). (Tr. at 135-36.) Plaintiff attended the subsequent hearing on June 7, 2016, along with her attorney and an impartial vocational expert. (Tr. at 21.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 32) and, on August 14, 2017, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since August 23, 2014, her amended alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease of the lumbar spine, obesity, chronic fatigue syndrome, knee arthropathies, anxiety disorder, affective disorder, and personality disorder.

(Tr. at 23.) The ALJ found at step three that none of these impairments, either individually or in combination, met or equaled any disability listing. (Tr. at 24-26.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following, additional restrictions:

> [Plaintiff] can sit, stand, and walk for up to two hours in an eight hour workday before needing to take a break. [She] can occasionally climb ramps and stairs,

5

and occasionally climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] can have occasional exposure to humidity and wetness, and never have exposure to extreme heat or cold. [She] is limited to hearing and understanding simple oral instructions; limited to performing simple and routine tasks; and limited to simple work-related decisions. [She] can occasionally respond appropriately to supervisors, coworkers, and [the] public. [Plaintiff] is limited to simple work-related decisions in dealing with changes in the work setting. [Her] time off task can be accommodated by normal breaks.

(Tr. at 26.) Based on the above RFC and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff was unable to return to any of her past relevant work. (Tr. at 31.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 31-32.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 32.)

Plaintiff now raises two challenges to the ALJ's decision. First, she argues that the ALJ "erred in failing to address Plaintiff's VA unemployability status and in failing to explain the reasons for not giving significant weight to Plaintiff's disability rating from the VA." (Pl.'s Br. [Doc. #15] at 4.) Second, Plaintiff contends that the ALJ "failed to properly explain the reasons for the weight assigned to the medical opinion of Plaintiff's treating physician," Dr. Karen Smith. (Id.) After careful consideration of the record, the Court finds Plaintiff's first contention merits remand, and the Court therefore need not reach the second contention.

A. VA Disability Rating

As provided at 20 C.F.R. § 404.1504 and further explained in Social Security Ruling ("SSR") 06-03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration ("SSA"). Rather, "the ultimate

6

responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." Social Security Ruling 06-03p, Titles II and XVI: Considering Opinions And Other Evidence From Sources Who Are Not "Acceptable Medical Sources" In Disability Claims; Considering Decisions On Disability By Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at *6 (Aug. 9, 2006) ("SSR 06-03p").[4] Nevertheless, the SSA is "required to evaluate all the evidence in the case record that may have a bearing on [its] determination or decision of disability, including decisions by other governmental and nongovernmental agencies." Id. at *6. Therefore, "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." Id. at *6. Moreover, "the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases." Id. at *7.

In Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012), the Fourth Circuit clarified the Commissioner's obligations under 20 C.F.R. § 404.1504 and SSR 06-03p, and held that the Commissioner must give <u>substantial weight</u> to a Veterans Affairs disability rating," based on the following reasoning:

> The VA rating decision reached in Bird's case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of Bird's medical condition. Because the purpose

---

[4] For claims filed after March 27, 2017, these regulations have been amended and Social Security Ruling 06–03p has been rescinded. The new regulations provide that the SSA "will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits," 20 C.F.R. § 404.1504; 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263-01 (Mar. 27, 2017). In rescinding SSR 06–03p, the SSA noted that for claims filed on or after March 27, 2017, "adjudicators will not provide any articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is inherently neither valuable nor persuasive to us." 82 Fed. Reg. 15263-01. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the guidance set out above.

and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give <u>substantial weight</u> to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ <u>clearly demonstrates</u> that such a deviation is appropriate.

Bird, 699 F.3d at 343 (emphasis added). The Fourth Circuit further explained, in Woods v. Berryhill, 888 F.3d 686 (4th Cir. 2018),

> that in order to demonstrate that it is "appropriate" to accord less than "substantial weight" to [another agency's] disability decision, an ALJ must give "persuasive, specific, valid reasons for doing so that are supported by the record." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (describing standard for VA decisions); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (explaining that ALJs need not give great weight to VA disability determinations "if they adequately explain the valid reasons for not doing so").
>
> For example, an ALJ could explain which aspects of the prior agency decision he finds not credible and why, describe why he finds other evidence more credible, and discuss the effect of any new evidence made available after [other agency] issued its decision. This list is not exclusive, but the point of this requirement—and of these examples—is that the ALJ must adequately explain his reasoning; otherwise, we cannot engage in a meaningful review. See Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (explaining that because we review an ALJ's factual findings for substantial evidence, an ALJ's decision must generally "include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence").

Id. at 692-93.

In the present case, Plaintiff received a determination from the Department of Veterans Affairs dated July 19, 2015, concluding that she had a disability rating of 70% in connection with her Post Traumatic Stress Disorder as of April 13, 2013, based on:

8

> Difficulty in adapting to work. Difficulty in adapting to a worklike setting. Difficulty in adapting to stressful circumstances. Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. Disturbances of motivation and mood. Difficulty in understanding complex commands. Chronic sleep impairment. Anxiety. Depressed Mood.

(Tr. at 308.) The ALJ stated in her decision that she "fully considered the findings contained within the [VA's 2015] Rating Decision, including the determination of [Plaintiff's] 70 percent disability rating" for PTSD as of April 13, 2013. (Tr. at 30.) However, the ALJ assigned this rating little weight based on the following reasoning:

> I note that the standards used by the Department of Veterans Affairs in determining disability are completely different tha[n] those used by the Social Security Administration; therefore, I am not bound by the findings set forth in the claimant's Rating Decision. (20 CFR 404.1504; SSR 06-03p). Furthermore, I note that an opinion on whether an individual is disabled goes to an issue reserved to the Commissioner and therefore cannot be given special significance; however, such opinions should still be considered in the assessment of the claimant's residual functional capacity (20 CFR 404.1527(e); SSR 96-05p). With this in mind, I have fully considered the findings contained within the Rating Decision, including the determination of the claimant's 70 percent disability rating. However, I give little weight to such determination due to its inconsistency with the objective medical evidence and the other opinion evidence of record, which rely on standards used by Social Security.

(Tr. at 30.)

As an initial matter, "citing to 'different rules and different standards' as a rationale to give less than substantial weight to a VA disability determination is not enough, because such a rationale would apply to every case, and thus cannot clearly demonstrate a reason for departing from the Bird presumption." Hildreth v. Colvin, No. 1:14CV660, 2015 WL 5577430, at *4 (M.D.N.C Sept. 22, 2015) ("[T]he ALJ's statement that she was 'not bound by' the VA's disability ratings because the VA's disability standards differed from those of the SSA disregards Bird's holding to the contrary that, '[b]ecause the purpose and evaluation

9

methodology of both programs are *closely related*, a disability rating by one of the two agencies is *highly relevant* to the disability determination of the other agency.'" (emphasis in original)); see also Woods, 888 F.3d at 693 (holding that a "generic explanation," used to justify assigning little weight to a North Carolina Department of Health and Human Services ("NCDHHS") ruling, was "neither persuasive nor specific" and "did not adequately justify [the ALJ's] decision.")

The remaining issue, therefore, is whether the ALJ adequately explained her reasons for according "little weight" to the VA determination by finding the Rating Decision "inconsisten[t] with the objective medical evidence and the other opinion evidence of record which rely on standards used by Social Security." (Tr. at 30.) Ultimately, the Court finds that this general claim of inconsistency is not "persuasive, specific, valid . . . and supported by the record" as contemplated by Woods, 888 F.3d at 692.

Notably, Defendant fails to mention Woods in her brief. Instead, she cites three instances in which, elsewhere in her decision, the ALJ discussed evidence as part of the RFC determination. Defendant contends that this evidence is inconsistent with the VA Rating Decision, and that the evidence provides a sufficient basis to depart from the Bird presumption. In particular, Defendant notes that (1) "VA records revealed that Plaintiff's bipolar disorder and PTSD were well under control," (2) "Plaintiff's symptoms were treated solely with medication," and (3) "treating physician Karen Smith, M.D., consistently recorded normal mental status findings." (Def.'s Br. [Doc. #17] at 6-7.) However, the ALJ did not

10

expressly consider these factors when weighing the VA Rating Decision.[5] In this respect, the present case again mirrors Woods, 888 F.3d at 693, in which the Commissioner "argue[d] that because the ALJ's decision as a whole makes clear that he considered the same evidence on which the NCDHHS decision relied, the ALJ did not need to refer expressly to that evidence in discussing the NCDHHS decision." The Fourth Circuit rejected that contention in Woods. As the Fourth Circuit explained, "[i]t may well be that the ALJ considered this evidence in deciding *both* which doctors and evidence to credit *and* whether the NCDHHS decision deserved substantial weight. But meaningful review cannot rest on such guesswork." Id. at 693-94 (citing DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) ("It may be, of course, as the Secretary suggests on appeal, that the ALJ considered all of these factors and proposed to himself cogent reasons for disregarding them. However, on this record we cannot so determine.")). Because the ALJ in this case failed to adequately explain why she accorded the VA Rating Decision "little weight" by identifying "persuasive, specific, valid reasons for doing so," remand is required.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner

---

[5] Moreover, the evidence cited by Defendant disregards several crucial factors. For instance, Dr. Smith served as the treating provider for Plaintiff's physical impairments, rather than the mental impairments at issue here, and Dr. Smith's treatment notes also reflect that Plaintiff was suffering from anxiety disorder with a need for psychiatric referral. (Tr. at 766.) Similarly, the treatment note cited by Defendant reflecting that Plaintiff's PTSD was "well controlled" is a note from Plaintiff's annual physical exam at the women's health clinic, reflecting in her history "bipolar disorder and PTSD treated and under well control with Mental health her[e] at the VA." Mental health treatment notes from the week prior indicate that Plaintiff continued to experience, and receive treatment for, increased anxiety, anger, possible auditory hallucinations, and mental side effects from her pain medications (Tr. at 866), as also reflected at multiple other mental health treatment appointments after her amended alleged onset date (Tr. at 835, 875, 884, 885, 892, 894). At least one of Plaintiff's appointments during this time included psychotherapy (see Tr. at 867), and Plaintiff also expressed a willingness to return to group therapy for PTSD, in which she had previously participated five days per week in 2013 and early 2014 (Tr. at 473, 692-95, 867).

under sentence four of 42 U.S.C. § 405(g). Defendant's Motion for Judgment on the Pleadings [Doc. #16] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #14] should be GRANTED to the extent set out herein. However, to the extent Plaintiff seeks an immediate award of benefits, that request should be denied.

This, the 25th day of February, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge